UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION


KANDI MAELYNN COBB                                                                PLAINTIFF


           VS.                          Civil No. 2:13-cv-02265-MEF


CAROLYN W. COLVIN,                                                                DEFENDANT
Commissioner of Social Security Administration

## MEMORANDUM OPINION

Plaintiff, Kandi Maelynn Cobb, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act (hereinafter "the Act"). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

### I.      Procedural Background:

Plaintiff filed her application for DIB and SSI on April 19, 2011, alleging an onset date of December 28, 2010, due to congestive heart failure and narcolepsy. (T. 131, 137, 170, 177) Plaintiff's applications were denied initially and on reconsideration. (T. 69-71, 72-75, 81-83, 84-86) Plaintiff then requested an administration hearing, which was held in front of Administrative Law Judge ("ALJ"), Hon. Clifford Shilling, on July 30, 2012.  Plaintiff was present, represented by counsel.

1

At the time of the hearing, Plaintiff was 38 years of age, had the equivalent of a high school education,[1] and had obtained her certified nursing assistant ("CNA") certificate. (T. 170-171, 388, 699) At the hearing, Plaintiff added to her list of severe impairments pseudoseizures, posttraumatic stress disorder ("PTSD"), and lower back pain. (T. 42) Plaintiff's past relevant work included working as a CNA from 1995 until 2010 and a fast food worker from 1995 to 1997. (T. 171, 209)

On October 19, 2012, the ALJ found Plaintiff's PTSD and depression severe; however, he found Plaintiff's seizures not severe. (T. 12-15) The ALJ determined Plaintiff's seizures did not cause more than a minimal limitation in the Plaintiff's ability to perform basic mental work tasks. (T. 13) Considering the Plaintiff's age, education, work experience, and the residual functional capacity ("RFC") based upon all of her impairments, the ALJ concluded Plaintiff was not disabled from December 28, 2010, through the date of his Decision issued October 19, 2012. The ALJ determined Plaintiff had the RFC to perform a full range of work at all exertional levels, but with the following non-exertional limitations: Plaintiff must avoid even moderate exposure to hazards, such as machinery and heights; observe other seizure precautions; work where interpersonal contact was incidental to the work performed; the complexity of the tasks was learned and performed by rote with few variables and little judgment involved; and, where supervision was simple, direct, and concrete. (T. 17)

Plaintiff appealed this decision to the Appeals Council, but said request for review was denied on October 20, 2013. (T. 1-5) Plaintiff then filed this action on December 30, 2013. (Doc. 1) This case is before the undersigned pursuant to consent of the parties. (Doc. 6) Both parties have filed briefs, and the case is ready for decision. (Doc. 10 and 11)

---

[1] Plaintiff indicated in her Disability Report she had graduated from high school; however, she reported to both Dr. Efird and Dr. Deyoub she obtained her GED. (T. 388, 699)

2

## II. Applicable Law:

This court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). The Court must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin,* 761 F.3d 853, 858 (8th Cir. 2014). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the Court must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving her disability by establishing a physical or mental disability that has lasted at least one year and that prevents her from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A plaintiff must show that her disability, not simply her impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful

activity since filing his or her claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his or her age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Only if he reaches the final stage does the fact finder consider the Plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   Discussion:

The Court must determine whether substantial evidence, taking the record as a whole, supports the Commissioner's decision that Plaintiff had not been disabled from the alleged date of onset on December 28, 2010, through the date of the ALJ's Decision issued October 19, 2012. Plaintiff raises three issues on appeal, which can be summarized as: (A) the ALJ failed to fully and fairly develop the record; (B) the ALJ erred in his assignment of weight given to the medical sources; and, (C) the ALJ erred in his credibility analysis. (Doc. 10, pp. 13-19)

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs and the ALJ's opinion, and they are repeated here only to the extent necessary.

### Fully and Fairly Develop the Record:

Plaintiff asserts the ALJ failed to fully and fairly develop the record when he failed grant a new hearing in response to the report of Dr. Deyoub, a forensic psychologist; the ALJ failed to order a Minnesota Multiphasic Personality Inventory ("MMPI") and an additional consultative

4

examination based upon the results of Plaintiff's IQ test; and, that Plaintiff met the listing requirements of 20 C.F.R. Part 404, Subpt. P, Listing § 12.05C. (Doc. 10, pp. 13-15)

The ALJ owes a duty to a Plaintiff to develop the record fully and fairly to ensure his decision is an informed decision based on sufficient facts. *See Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004). In determining whether an ALJ has fully and fairly developed the record, the proper inquiry is whether the record contained sufficient evidence for the ALJ to make an informed decision. *See Haley v. Massanari*, 258 F.3d 742, 748 (8th Cir. 2001). The ALJ is only required to develop a reasonably complete record. *See Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). After reviewing the record, the undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision.

Plaintiff argues the ALJ erred when he failed to order a MMPI, consultative examination, and to conduct another hearing based upon Dr. Deyoub's Report. (Doc. 10, pp. 13-15) Plaintiff's arguments are untenable.

On September 13, 2012, Dr. Deyoub conducted an evaluation, at the request of Circuit Judge Michael Medlock, regarding whether the Plaintiff had the mental capacity to understand the proceedings[2] against her and had the capacity to assist effectively in her own defense. Dr. Deyoub diagnosed Plaintiff with depressive disorder, not otherwise specified; polysubstance abuse, stated to be in remission; and, mild mental retardation. (T. 695) Dr. Deyoub determined at the time of the offense Plaintiff did not have a mental disease; however, she had a mental defect. (T. 969) Plaintiff also had the "capacity to appreciate the criminality of the conduct, and the capacity to conform her conduct to the requirements of the law." (T. 696)

---

[2] Plaintiff was charged in Crawford County Circuit Court, 17CR 2011-620 II, with Residential Burglary, class B felony, and Theft of Property, class A misdemeanor. (T. 697)

Dr. Deyoub opined that by Plaintiff obtaining her generalized educational development ("GED"), it undermined the test results of her IQ. (T. 699) Dr. Deyoub indicated "it was apparent from this background that the IQ obtained during this examination was not valid." (T. 699) Furthermore, Dr. Deyoub noted Plaintiff did not try her best in the test and her full scale IQ of 52 was very likely an underestimate of her ability.  Dr. Deyoub determined Plaintiff had the capacity to engage in normal activities of daily living at the time of the charges. (T. 703)

Dr. Deyoub opined Plaintiff had the capacity to engage in self-serving, rather than self-defeating, behavior.  Plaintiff's emotional state was exaggerated during the evaluation. Dr. Deyoub believed Plaintiff was trying to portray herself as incompetent, and that she tried to illicit sympathy with tearfulness and crying. (T. 702) Dr. Deyoub diagnosed Plaintiff with mild mental retardation, but he thought her IQ of 65-70 could probably be in the borderline range and she did not do her best. (T. 701)

Plaintiff requested, at the hearing, a MMPI and consultative examination. (T. 64) The ALJ indicated he would send Plaintiff for a consultative examination, MMPI, and validity check; however, the record does not reflect that such testing was ever done. (T. 64)

 "The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled." *Id*. (internal quotations and citation omitted).

> While the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required "to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo* [*v. Barnhart*], 377 F.3d [801,] 806 [(8th Cir. 2004)]. The Commissioner's regulations explain that contacting a treating physician is necessary only if the doctor's records are "inadequate for us to determine whether [the claimant is] disabled" such as "when the report from your medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. §§404.1512(e), 416.912(e).

6

*Goff v. Barnhart*, 421 F.3d 785, 791 (8th Cir. 2005).

In reviewing the record, Plaintiff exhibited numerous instances of malingering and symptom magnification. The doctor's notes from St. Edwards Mercy Medical Center from March 27, 2011, indicated Plaintiff's "history [wa]s dramatic here." (T. 274) Dr. Jon Gustafson, neurologist at Sparks Regional Medical Center, was suspect of Plaintiff's reasoning for not completing the 24-hour electroencephalogram ("EEG"). (T. 377) Dr. Terry L. Efird, psychologist and state agency medical examiner, performed a mental diagnostic evaluation of the Plaintiff on March 7, 2012. During this evaluation, Dr. Efird noted there were "remarkable indications of symptom exaggeration." (T. 391) Dr. Deyoub indicated Plaintiff's emotional state was very exaggerated during his evaluation, and he believed Plaintiff was trying to portray herself as incompetent and sought to illicit sympathy with tearfulness and crying. (T. 702)

The Program Operations Manual System DI 22510.006 directs an ALJ not to order a symptom validity test to address the credibility or malingering as part of the consultative examination. https://secure.ssa.gov/poms.nsf/lnx/0422510006 (last visited August 19, 2015). "Tests cannot prove whether a claimant [wa]s credible or malingering because there [wa]s no test that, when passed or failed, conclusively determines the presence of inaccurate self-reporting." *Id.* In the present case, there was ample evidence of malingering and symptom exaggeration on the part of the Plaintiff; thus, the ALJ's decision not to order symptom validity testing was not error.

In making his RFC determination, the ALJ considered evidence from Plaintiff's treating physicians, state agency medical consultants, hearing testimony of the Plaintiff and her husband, and the documents submitted to the Agency.  "A disability claimant is entitled to a full and fair hearing under the Social Security Act." *Halverson v. Astrue*, 600 F.3d 922, 933 (8th Cir. 2010) (internal quotations and citation omitted). Where "the ALJ's determination is based on all the

7

evidence in the record, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," the claimant has received a "full and fair hearing." *Id.* (internal quotations and citation omitted). In the present case, the Plaintiff had a full and fair hearing.

Plaintiff also argues that based upon Dr. Deyoub's Report, Plaintiff's alleged mental retardation met the listing requirements of 20 C.F.R. Part 404, Subpt. P, Listing § 12.05C. The Plaintiff is mistaken.

To meet Listing 12.05C, the Plaintiff "must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Maresh v. Barnhart*, 438 F.3d 897, 899 (8th Cir. 2006). In order to satisfy Social Security regulations' disability listing for mental retardation, claimant must demonstrate or support onset of impairment before age 22, i.e., "manifested during the developmental period" language of listing's introduction is mandatory; however, listing does not require formal diagnosis of mental retardation. 20 C.F.R., Part 404, Subpart P, App. 1, § 12.05(C). *Id.* There was no evidence in the record to show Plaintiff demonstrated an onset of impairment before age 22. Moreover, Plaintiff obtaining her GED and CNA undermines her argument she met the listing requirements of mental retardation.

Plaintiff was given two opportunities to be truthful and not malinger during her consultative examination with Dr. Efird and evaluation with Dr. Deyoub, and she failed to do so. An additional MMPI, consultative examination, and hearing would be equally unreliable, as it is evident from the record Plaintiff malingered and exaggerated during both her mental evaluations, and the additional tests and hearing could not prove whether Plaintiff was credible.

8

Plaintiff also failed to allege mental retardation in her application for disability and failed to proffer it at the hearing as a basis for disability. The Eight Circuit has repeatedly stated that an ALJ has no duty "'to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.' " *Gregg v. Barnhart,* 354 F.3d 710, 713 (8th Cir. 2003) (quoting *Pena v. Chater,* 76 F.3d 906, 909 (8th Cir. 1996)); *see also Brockman v. Sullivan,* 987 F.2d 1344, 1348 (8th Cir. 1993) ("The ALJ, however, had no obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability."); *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir. 1989) (ruling that ALJ did not err in not ordering consultative examination before concluding claimant had no mental impairment where claimant did not allege disability due to mental impairment and presented only minimal evidence of anxiety).

In reviewing the entire record, the undersigned finds the record contained sufficient evidence for the ALJ to make an informed decision. Further, the Plaintiff has not demonstrated unfairness or prejudice resulting from the ALJ's failure to order additional consultative examinations, a MMPI, or another hearing to further develop the record. Such a showing is required in order for a case to be reversed and remanded. *See Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993) (absent unfairness or prejudice, we will not reverse or remand). Accordingly, the ALJ did not err in failing to develop the record and his decision is affirmed.

**Weight of Medical Sources:**

The Plaintiff argues that the ALJ committed legal error by giving Dr. Gustafson's opinion little weight and not adopting all of Dr. Efird's findings. (Doc. 10, p. 16)

The regulations provide that if an ALJ finds a "treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and

9

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) However, if the ALJ finds the treating physician's opinion was not entitled to controlling weight, the ALJ utilizes the following factors to assign a weight to the opinion: examining relationship; treatment relationship including the length of the treatment relationship and the frequency of examination and nature and extent of the treating relationship; supportability; consistency; specialization; and, any other factors the Plaintiff brings to the ALJ's attention. 20 C.F.R. §§ 404.1527(c)(1-6), 416.927(c)(1-6).

Plaintiff sought treatment from Dr. Jon Gustafson, neurologist with Sparks Neurology Center, on June 2, 2011. Upon physical examination, Dr. Gustafson observed Plaintiff appeared to be well nourished, well developed and hydrated. (T. 383) Plaintiff's pupils were equal and reactive to light; her heartrate and rhythm were regular; and, her extremities were normal with no edema present. Plaintiff had normal musculature, no joint deformities or abnormalities; normal range of motion in all four extremities and her head/neck and spine; her memory was intact, cranial nerves were intact, and no motor or sensory deficits were noted; fine motor skills were normal; balance, gait and coordination were intact; and, deep tendon reflexes were preserved. Plaintiff was alert and oriented. Her knowledge was intact and she did not have any language deficits. Plaintiff had a normal attention span and concentration. (T. 384) Plaintiff was diagnosed with altered mental status and a 24-hour EEG test was ordered. (T. 384)

Over seven months later, on January 25, 2012, Plaintiff saw Dr. Gustafson for a follow up appointment. Dr. Gustafson noted Plaintiff was supposed to have completed a 24-hour EEG, but it had not been accomplished since her last appointment in June 2011. Plaintiff indicated she had lost her insurance coverage in September 2011, but Dr. Gustafson was suspect of her story. (T.

377) Plaintiff reported having multiple seizures, up to 14 per day. Her Lamictal had been increased. (T. 377) Dr. Gustafson's plan was for the Plaintiff to receive a 24-hour ambulatory EEG, continue taking Lamictal, and for her to return in three months. (T. 377)

In February 2012, Dr. Gustafson prepared a treating physician's report for seizure disorder. (T. 385) Plaintiff indicated she had loss of consciousness up to four days in duration. Dr. Gustafson opined Plaintiff needed more diagnostic work. Plaintiff reported fourteen seizures per day with urination or defecation and alteration of awareness. (T. 385) Plaintiff had started her seizure medication prior to her doctor's appointment with him in June 2011. (T. 385) After Plaintiff's medication had been altered, she reportedly had hundreds of seizures. (T. 385) Dr. Gustafson ordered a 24-hour EEG study. (T. 385) On March 15, 2012, the results of Plaintiff's 24-hour EEG were normal. (T. 565)

On May 4, 2012, Dr. Gustafson completed a seizure RFC questionnaire. (T. 501) Dr. Gustafson diagnosed Plaintiff, after two visits and a normal EEG, with pseudoseizures. (T. 501) Based upon Plaintiff's reported fourteen seizures daily, Dr. Gustafson indicated she had 98 seizures per week, varying in duration. (T. 501) Plaintiff's postictal manifestations included confusion, exhaustion, and irritability. (T. 502) Plaintiff did not have a history of injury during a seizure, however she did have a history of fecal and urinary incontinence. (T. 502) Dr. Gustafson indicated Plaintiff was not compliant in taking her medication. (T. 502) Plaintiff suffered from ethanol and Tetrahydrocannabinol related seizures, her seizures would likely disrupt the work of co-workers, and she needed more supervision at work than an unimpaired worker. (T. 503) Dr. Gustafson determined Plaintiff had the following mental problems: depression, irritability, short attention span, and memory problems. Plaintiff would also need hourly breaks and would take hours for her to return to work. (T. 503) Dr. Gustafson determined Plaintiff had no capacity for stress and

11

was incapable of even low stress jobs. (T. 503) Plaintiff's impairments would likely produce both good and bad days, and she would be absent more than four days per month. (T. 503)

After thoroughly examining Plaintiff's hearing testimony and medical records, the ALJ afforded Dr. Gustafson's opinion little weight, because his findings were based upon the Plaintiff's subjective history reported to him. (T. 14) The ALJ noted Dr. Gustafson questioned some of Plaintiff's reported history and that she failed to follow-up as directed.  Dr. Gustafson only saw Plaintiff twice and had not developed a sufficient treatment history that would justify the extensive limitations noted on the form.  The ALJ further indicated Dr. Gustafson's notes showed Plaintiff's seizures might have been related to Plaintiff's illicit drug use. (T. 14)

The undersigned has reviewed the medical evidence and finds that the ALJ gave valid reasons for discounting the weight of Dr. Gustafson's report: there were inconsistencies between his treatment records and the report, and the report was largely based upon Plaintiff's subjective complaints of pain with little objective medical support. *See Teague,* 638 F.3d at 650 (the ALJ discounted the medical source statement as it failed to cite clinical test results, observations, or other objective findings as a basis for determining the Plaintiff's capabilities); *Wildman v. Astrue,* 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original) (internal quotation omitted)("an ALJ may discount or even disregard the opinion of a treating physician where other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions").

Plaintiff next argues the ALJ erred when he failed to adopt all of Dr. Efird's findings. Plaintiff's argument is misplaced.

Dr. Efird performed a mental diagnostic evaluation of the Plaintiff on March 7, 2012.  Plaintiff indicated she filed for disability because "this social security lady came up to the room I was in"

and "I had a heart attack." (T. 387) Plaintiff reported the heart attack occurred in March 2011, and she was hospitalized for 72 hours. (T. 387) Plaintiff reported seeing dead people for the past six to seven months. (T. 387) Plaintiff indicated she was depressed and had been diagnosed with bipolar, despite not having had mental health treatment. (T. 387-388) Plaintiff was prescribed Lamotrigine, Flouxetine, and Diazepam, but she took twice the level prescribed of Diazepam. (T. 388) Plaintiff indicated she drank one-half pint of vodka daily; smoked marijuana and methamphetamine, but had stopped using methamphetamine on a daily basis in 2001; and, that she last relapsed in 2008. (T. 389)

Dr. Efird observed Plaintiff was appropriately dressed and groomed. She was remarkably difficult to focus at times, and Dr. Efird had questions about her optimal level of cooperation. Plaintiff's mood was sad, anxious, and agitated. Her affect was distressed/tearful and not well modulated. Dr. Efird observed a remarkably dramatic style. Plaintiff's speech was slow with a remarkable tendency to ramble. Plaintiff appeared to have difficulty organizing her thoughts clearly at times. Plaintiff's suicidal ideations were alleged to have occurred "every five minutes" and she reported three prior suicide attempts. Plaintiff was reasonably alert and oriented to person, place, and time. (T. 389)

Dr. Efird opined Plaintiff's fund of general information suggested she was borderline to low average intellectual functioning. (T. 390) Upon these findings, educational history, nature of prior work, and general level of adaptive functioning, Dr. Efird opined Plaintiff did not appear to function within or near the mentally retarded range. (T. 390) Considering Plaintiff's highly emotional and dramatic manner; reported daily visual hallucinations; suicidal ideations "every five minutes," Dr. Efird indicated there were remarkable indications of symptom exaggeration during the evaluation and the current findings did not appear reasonably reliable. (T. 390) Despite his note

13

that it was difficult to give a clear diagnosis, Dr. Efird diagnosed Plaintiff with PTSD; chronic, depressive disorder, not otherwise specified; and, borderline personality disorder. (T. 390) Dr. Efird also noted it was difficult to assess a Global Assessment of Function ("GAF") score; nonetheless, he assessed a GAF score of 40-50.

Plaintiff reported the ability to shop independently, despite having difficulty remembering merchandise and purchasing numerous items of one kind.  Plaintiff indicated she could handle finances.  Plaintiff's ability to perform her activities of daily living were reportedly impaired by her not getting out of bed.  Plaintiff reported she had been socially isolated for three years. Plaintiff did not interact in a socially adequate manner; she did not always communicate information in a reasonably effective manner and tended to ramble fairly often; and, she had remarkable difficulty with attention/concentration at the present time.  Despite these reported limitations, Dr. Efird opined Plaintiff had the capacity to perform basic cognitive tasks required for basic work like activities.  Based upon the presentation during the evaluation, Dr. Efird opined Plaintiff would have problems sustaining persistence over longer time frames.  Further, Plaintiff's mental pace of performance was moderately to markedly slow during the evaluation. (T. 391) Dr. Efird opined Plaintiff could manage funds without assistance.  Dr. Efird noted there were "remarkable indications of symptom exaggeration" in the evaluation.  The reliability of his findings had limitations, and he opined a "higher than average level of examination for the possible of malingering appear[ed] reasonable." (T. 391)

While Dr. Efird observed remarkable indications of symptom exaggeration during his evaluation, he opined Plaintiff had the basic cognitive tasks required for basic work like activities, and the ALJ gave Dr. Efird's opinion substantial weight. (T. 18, 391) When determining Plaintiff's RFC, the ALJ took into consideration Dr. Efird's evaluation.  In affording Dr. Efird's opinion

substantial weight, the ALJ determined Plaintiff's evidence of exaggerating her symptoms was consistent with the lack of cooperation with treatment and it further lessoned the weight of Plaintiff's subjective complaints of pain. (T. 19-20)

The undersigned finds the ALJ did not err in assigning Dr. Efird's opinion substantial weight, as it was consistent with the other medical evidence. *See Wagner v. Astrue*, 499 F.3d 842, at 849 (8th Cir. 2007) (ALJ may credit another medical evaluation over that of treating physician when other assessment is supported by better medical evidence, or where treating physician renders inconsistent opinions).

**Credibility Analysis:**

Plaintiff also argues that the ALJ failed to properly evaluate the Plaintiff's subjective complaints of pain. (Doc. 10, pp. 17-19) Among the ALJ's findings in his Decision was a finding that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment." (T. 18) The ALJ employed a bit of Social Security boilerplate, but the ALJ appropriately addressed Plaintiff's credibility by examining and addressing the relevant medical evidence, application documents, and testimony at the hearing, in accordance with applicable regulations, rulings and Eighth Circuit case law.

It is the ALJ's duty to determine the Plaintiff's RFC.  Before doing so, the ALJ must determine the applicant's credibility, and how the Plaintiff's subjective complaints play a role in assessing her RFC. *Pearsall,* 274 F.3d at 1217-18. The ALJ must give full "consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters

as: (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and, (5) functional restrictions. The adjudicator is not free to accept or reject the claimant's subjective complaints solely on the basis of personal observations. Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole. *Polaski v. Heckler*, 739 F.2d 1230, 1322 (8th Cir. 1984).

To conduct the proper *Polaski* analysis, "[m]erely quoting *Polaski* is not good enough, especially when an ALJ rejects a claimant's subjective complaints of pain." *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995). Instead, "*Polaski* requires that an ALJ give full consideration to all of the evidence presented relating to subjective complaints." *Ramey v. Shalala*, 26 F.3d 58, 59 (8th Cir. 1994). To that end, "[w]hen making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir. 1996) (citing *Hall*, 62 F.3d at 223). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir. 1995) (citing *Ricketts v. Secretary of Health and Human Servs.*, 902 F.2d 661, 664 (8th Cir. 1990)). However, if "the ALJ did not explicitly discuss each *Polaski* factor in a methodical fashion," but "acknowledged and considered those factors before discounting [the claimant's] subjective complaints of pain .... [a]n arguable deficiency in opinion-writing technique is not a sufficient reason for setting aside an administrative finding where ... the deficiency probably had no practical effect on the outcome of the case." *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996) (citing *Benskin v. Bowen*, 830 F.2d at 883).

In applying the factors discussed in *Polaski*, the ALJ found that Plaintiff's symptoms were not entirely credible. Plaintiff failed to comply with treatment. The ALJ noted Plaintiff sought treatment from Dr. Max Baker at Perspectives Behavioral Health Management ("Perspectives") from March 22, 2012, until she was discharged on June 12, 2012. Upon discharge, Dr. Baker noted Plaintiff made very little progress, her attendance was poor, and when she did attend she was withdrawn from activities or sat outside. (T. 509) Further, Plaintiff failed to follow Dr. Gustafson's recommendation for a 24-hour EEG. (T. 377) Plaintiff also refused to take her seizure medication. (T. 420) *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment . . . weighs against a claimant's credibility.").

While Plaintiff routinely sought refills from her primary care physician, Dr. N. Van Hoang, for pain medication, there was evidence she supplemented her supply of pain medication by frequenting St. Edward Mercy Medical Center's emergency room and Sparks Regional Medical Center's emergency room. (T. 357, 434, 446, 543, 567, 575, 577, 589-590, 604, 607, 628, 630, 644, 660-661, 666, 685-688, 690, 692) Plaintiff indicated to Dr. Deyoub on September 3, 2012, she stopped methamphetamine usage in 1998 (T. 699); however, she admitted to Dr. Baker in her initial evaluation on March 28, 2012, that she had used methamphetamine within the last three months. (T. 396) One's misuse of medications is a valid factor in an ALJ's credibility determination. *See Anderson v. Shalala*, 51 F.3d 777, 780 (8th Cir. 1995) (observing that claimant's "drug-seeking behavior further discredits her allegations of disabling pain"); *Anderson v. Barnhart,* 344 F.3d 809, 815 (8th Cir. 2003) (a social security disability claimant's misuse of medications is a valid factor in an ALJ's credibility determination).

Plaintiff repeatedly exhibited evidence of symptom exaggeration and malingering. As previously discussed, there were several instances in the record where doctors observed Plaintiff

was exaggerating her symptoms and showed evidence of malingering. (T. 391, 699, 701-703) *See Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009) (ALJ may discount Plaintiff's allegations if there is evidence Plaintiff is a malingerer or was exaggerating symptoms for financial gain).

Because the ALJ's credibility determination was supported by good reasons and substantial evidence, the Court concludes that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006); *Dunahoo v. Apfel*, 241 F.3d at 1037 (holding that ALJ's decision to discredit plaintiff's testimony will be upheld if he gives a good reason for doing so, even if every factor is not discussed in depth).

### IV. Conclusion:

Having carefully reviewed the record as a whole, the undersigned finds that substantial evidence supports the Commissioner's Decision denying Plaintiff benefits, and the Commissioner's Decision should be affirmed. Plaintiff's Complaint should be dismissed with prejudice.

Dated this 21st day of August, 2015.

/s/ Mark E. Ford
HONORABLE MARK E. FORD
UNITED STATES MAGISTRATE JUDGE